Case 1:16-cr-20719-RNS Document 1 Entered on FLSD Docket 09/23/2016 Page 1 of 19

FILED BY _____ D.C.

Sep 23, 2016

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. – FT. LAUD.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**16-20719-CR-SCOLA/OTAZO-REYES**
CASE NO. _____
18 U.S.C. § 371

UNITED STATES OF AMERICA

v.

ROY JESUS BUSTILLO, a/k/a "RJ,"
ROLANDO PEREZ, a/k/a "Roly," and
JOSE BARROSO, a/k/a "Pepe,"

**Defendants.**
_____/

### INFORMATION

The United States Attorney charges that:

### GENERAL ALLEGATIONS

At all times relevant to this Information:

#### Background

1. The Miami-Dade County Aviation Department (hereinafter referred to as the "Aviation Department") is a department within Miami-Dade County, having been so established pursuant to Miami-Dade ordinance No. 73-851, on February 6, 1973.

2. The Aviation Department periodically issued an Invitation to Quote (hereinafter referred to as "RFQs") for lighting products to be used at Miami International Airport.

3. During the period of 2010 through and including 2015, the Aviation Department issued RFQs for the purchase of millions of dollars of LED light fixtures (hereinafter referred to as the "Light Fixtures").

4. A multi-national corporation (hereinafter referred to as the "Lighting Manufacturer") manufactured the Light Fixtures. The Lighting Manufacturer used a South Florida company

1

(hereinafter referred to either as the "Lighting Distributor" or "**BUSTILLO**'s Company") as its exclusive area representative in South Florida for the sale of the Light Fixtures. From 2010 through and including 2015, the Lighting Manufacturer and the Lighting Distributor utilized interstate wire and electronic communications, among other means, regarding the sale of the Light Fixtures.

5. The Lighting Distributor did not sell the Light Fixtures directly to the Aviation Department. Instead, the Lighting Distributor notified the Lighting Manufacturer that the Aviation Department was issuing an RFQ for the Light Fixtures to a list of pre-approved vendors. The Lighting Manufacturer and the Lighting Distributor agreed upon a price that the Lighting Manufacturer would sell the Light Fixtures to the vendor that won the RFQ. The Lighting Distributor sent each of the interested vendors, by email or other means, the price that the Lighting Manufacturer agreed to sell the Light Fixtures to the winning bidder. Each of the vendors then added a commission of generally 3%-7% and submitted their bid to the Aviation Department.

6. Global Electrical & Lighting Supplies, Inc. (hereinafter referred to as "Global") was one of the vendors that submitted bids in response to the Aviation Department RFQ's for the Light Fixtures. Global was awarded the contracts to supply the Light Fixtures to the Aviation Department for each and every RFQ issued during 2010 through and including 2015.

### The Defendants

7. Defendant **ROY JESUS BUSTILLO** (hereinafter referred to as "**BUSTILLO**") was an owner and officer of the Lighting Distributor.

8. Defendant **ROLANDO PEREZ** (hereinafter referred to as "**PEREZ**") was an owner and an officer of Global.

9. Defendant **JOSE BARROSO** (hereinafter referred to as "**BARROSO**") was an

owner and officer of Solair Electrical Controls, Incorporated (hereinafter referred to as "Solair") and other companies. Defendant **BARROSO** was previously the Chief of Facilities for the Aviation Department.

## COUNT 1

(Conspiracy to Commit Mail Fraud and Wire Fraud, 18 U.S.C. § 371)

1. The General Allegations section of this Information is realleged and expressly incorporated herein as if set forth in full.

2. From in or about 2010 and continuing through in or about 2015, in Miami-Dade County in the Southern District of Florida and elsewhere, the defendants,

> **ROY JESUS BUSTILLO, a/k/a "RJ,"**
> **ROLANDO PEREZ, a/k/a "Roly," and**
> **JOSE BARROSO, a/k/a "Pepe,"**

did knowingly and willfully combine, conspire, confederate, and agree with each other and with other persons known and unknown to the United States Attorney to commit an offense against the United States of America, that is,

    a. to devise and intend to devise a scheme and artifice to defraud and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, and for the purpose of executing, and attempting to execute, such scheme and artifice to defraud and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, to knowingly cause to be delivered by United States mail and by commercial interstate carrier according to the directions thereon, certain matters and things, in violation of Title 18, United States Code, Section 1341 (Mail Fraud); and

    b. to devise and intend to devise a scheme and artifice to defraud and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, and, for the purpose of executing such scheme and artifice to

3

defraud and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, to knowingly transmit and cause to be transmitted by means of wire communication in interstate commerce, certain signs, writings, signals, pictures, and sounds, in violation of Title 18, United States Code, Section 1343 (Wire Fraud).

## The Purpose and Object of the Conspiracy

3. The purpose and object of the conspiracy was to enrich the members of the conspiracy from the proceeds of lighting contracts awarded to Global by the Aviation Department through unlawful means, and defrauding the Lighting Manufacturer, the competing vendors, and the Aviation Department.

## Manner and Means of the Conspiracy

4. In or about 2010, a co-conspirator (hereinafter referred to as "Co-conspirator 1"), a high-ranking employee of the Aviation Department, told **BARROSO** that he would request that the Aviation Department purchase the Light Fixtures represented by the Lighting Distributor, if Co-conspirator 1 was paid a share of the proceeds.

5. In or about 2010, **BARROSO** met with both **BUSTILLO** and **PEREZ** and discussed the sale of the Light Fixtures to the Aviation Department.

6. From 2010 through and including 2015, Co-conspirator 1 requested approval in order for the Procurement Office of the Aviation Department to issue RFQs for the Light Fixtures.

7. **BUSTILLO** and the Lighting Manufacturer agreed upon a special price for most of the Light Fixtures sold to the Aviation Department. In the beginning the price agreed upon by the Lighting Manufacturer and **BUSTILLO** was approximately $500 per Light Fixture with **BUSTILLO**'s Company receiving approximately a 7% commission. Eventually, the Lighting Manufacturer agreed to reduce the price to $400 per Light Fixture with **BUSTILLO**'s Company receiving a 3% commission.

4

8. After issuance of the RFQ, **BUSTILLO** provided a quote to each of those vendors interested in competing for the RFQs, by email or other means, which falsely stated that the Lighting Manufacturer's price for each of the Light Fixtures was, in most instances, $955.50. **PEREZ** added a commission to the price provided by **BUSTILLO** and submitted a bid, in most instances, for $980.

9. **PEREZ** and **BUSTILLO** had a secret agreement wherein **PEREZ** was the only vendor who was told the price that **BUSTILLO** had agreed upon with the Lighting Manufacturer for the Light Fixtures. Knowing the additional profit that was to be received from each of the contracts, **BUSTILLO** and **PEREZ** were able to win the RFQs by keeping Global's bid price low.

10. When the Lighting Manufacturer was made aware that **BUSTILLO** issued quotes to vendors stating that the price of the Light Fixtures was $955.50, a representative of the Lighting Manufacturer questioned **BUSTILLO**, who falsely stated that a special mounting accessory was needed in order for the Light Fixtures to be installed at the airport. **BUSTILLO** told the representative for the Lighting Manufacturer that the total sales price to the vendors would be $955.50, one portion for the Lighting Fixture and the remainder for the special mounting accessory. There was no special mounting accessory. Instead, the extra money was split between **BUSTILLO, PEREZ, BARROSO,** and Co-conspirator 1. Pursuant to their unlawful agreement, the conspirators caused thousands of Light Fixtures to be shipped in interstate commerce by private and commercial interstate carriers to the Aviation Department.

11. In or about 2010, **BUSTILLO**, in order to justify the additional expense for the Lighting Fixture, requested that Co-conspirator 1 include language in the RFQ that stated the Light Fixture be accompanied "with required mounting accessory."

5

### Payments For Light Fixtures That Were Never Ordered

12. On two occasions, Co-conspirator 1 instructed **BARROSO** to direct Global to bid on a RFQ for the Light Fixtures, but told **BARROSO** to tell Global not to order the Light Fixtures from the Lighting Manufacturer. Instead, Co-conspirator 1 told **BARROSO** that the Aviation Department had enough Light Fixtures in stock and that he would use those Light Fixtures to satisfy the order.

13. Global bid and won the contracts and was paid approximately $500,000 for Light Fixtures that were never ordered.

### Payments to the Conspirators

14. Co-conspirator 1 advised **BARROSO** whenever the Aviation Department issued a check to Global for payment of the Light Fixtures.

15. Upon being advised, **BARROSO** issued invoices from Solair to Global for an amount that started at $180 per Light Fixture and increased for subsequent orders to $265 per Light Fixture and more. These invoices were not for any services or materials provided; but rather was the means by which the proceeds of the fraud were paid to **BARROSO** and Co-conspirator 1.

16. **PEREZ** issued multiple checks from Global in amounts under $10,000 to Solair as payment for these invoices.

17. **PEREZ** also issued checks in excess of $10,000 to Solair and **BARROSO** deposited the checks into the bank account of Solair and issued checks from the bank account of Solair in amounts under $10,000 or issued checks to another company owned by **BARROSO** that issued checks in amounts under $10,000.

18. **BARROSO** cashed the checks at a check cashing store in Miami-Dade County.

19. **BARROSO** utilized the cash obtained from the check cashing store to pay

approximately half of the proceeds he received from the fraudulent scheme to Co-conspirator 1.

20. **BUSTILLO** sent numerous invoices from companies, of which **BUSTILLO** was an owner and an officer, to Global charging approximately $87 for each mounting bracket allegedly used to install each Light Fixture. No mounting brackets were ever sent to Global. The issuance of the invoice to Global for the mounting bracket was the means by which **BUSTILLO** obtained his share of the fraudulent proceeds.

21. **PEREZ** retained the remaining share of the fraudulent proceeds after payment to **BARROSO** and **BUSTILLO**.

22. During the course of the conspiracy, the co-conspirators defrauded the Aviation Department of over $5,000,000. **BARROSO** and Co-conspirator 1 split fraudulent proceeds of approximately $2.2 million. **BUSTILLO**, through his companies, received fraudulent proceeds of approximately $764,000. **PEREZ**, through Global, received fraudulent proceeds of approximately $1.8 million.

## Overt Acts

23. In furtherance of the conspiracy and to achieve the objective thereof, at least one of the co-conspirators committed or caused to be committed, in the Southern District of Florida, and elsewhere, at least one of the following overt acts, among others:

A. On or about January 24, 2014, defendant **BUSTILLO** sent or directed to be sent an email to a group of vendors desiring to bid on an Aviation Department RFQ setting forth the Lighting Manufacturer's price of $955.50 per Light Fixture for 739 Light Fixtures.

B. On or about January 31, 2014, in response to an RFQ, defendant **PEREZ** submitted a bid to the Aviation Department on behalf of Global with a sales price of $980 per Light Fixture for 739 Light Fixtures.

C. On or about February 10, 2014, defendant **PEREZ** submitted a purchase order to the Lighting Distributor setting forth a purchase price of $400 per Light Fixture for 739 Light Fixtures.

D. On or about February 10, 2014, defendant **BUSTILLO** sent or directed to be sent a purchase order, on behalf of Global, from the Lighting Distributor to the Lighting Manufacturer setting forth a purchase price of $400 per Light Fixture for 739 Light Fixtures.

E. On or about March 20, 2014, defendant **BARROSO** issued an invoice from Solair to Global in the amount of $13,250.

F. On or about May 5, 2015, defendant **BUSTILLO** sent or directed to be sent an email to a group of vendors desiring to bid on an Aviation Department RFQ setting forth the Lighting Manufacturer's price of $955.50 per Light Fixture for 1500 Light Fixtures.

G. On or about May 18, 2015, defendant **PEREZ** submitted a purchase order to the Lighting Distributor setting forth a purchase price of $400 per Light Fixture for 1500 Light Fixtures.

H. On or about June 18, 2015, defendant **BARROSO** issued an invoice from Solair to Global in the amount of $26,500.

All in violation of Title 18, United States Code, Section 371.

## FORFEITURE

1. Upon conviction of a violation of Title 18, United States Code, Section 371, as set forth in Count 1 of this Information, the defendants, **ROY JESUS BUSTILLO, ROLANDO PEREZ, and JOSE BARROSO,** shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the

offense. The property to be forfeited includes, but is not limited to the following property:

    A.    A money judgment in the amount of $5,000,000, which constitutes or was derived from proceeds traceable to the violation alleged in Count 1 of this Information.

*Thomas J. Mulvihill for*
WIFREDO A. FERRER
UNITED STATES ATTORNEY


JEFFREY N. KAPLAN
ASSISTANT UNITED STATES ATTORNEY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

../6./

UNITED STATES OF AMERICA        CASE NO._____

vs.
                                **CERTIFICATE OF TRIAL ATTORNEY***
ROY JESUS BUSTILLO, a/k/a "RJ,"
ROLANDO PEREZ, a/k/a "Roly," and
JOSE BARROSO, a/k/a "Pepe,"

_____ **Defendants.**  /    **Superseding Case Information:**

**Court Division:** (Select One)              New Defendant(s) ___ Yes ___ No
                                              Number of New Defendants ___
    Miami  X   Key West ___                   Total number of counts ___
    FTL ___    WPB ___    FTP ___

    I do hereby certify that:
1.  I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2.  I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3.  Interpreter:     (Yes or No)        No
    List language and/or dialect        English

4.  This case will take   0   days for the parties to try.

5.  Please check appropriate category and type of offense listed below:
    (Check only one)                        (Check only one)

    I    0 to 5 days      X          Petty      ___
    II   6 to 10 days     ___        Minor      ___
    III  11 to 20 days    ___        Misdem.    ___
    IV   21 to 60 days    ___        Felony     X
    V    61 days and over ___

6.  Has this case been previously filed in this District Court?    No   (Yes or No)
    If yes:
    Judge: _____   Case No. _____
           (Attach copy of dispositive order)
    Has a complaint been filed in this matter?    ~~No~~   (Yes or No)
    If yes:
    Magistrate Case No. _____
    Related Miscellaneous numbers: _____
    Defendant(s) in federal custody as of _____
    Defendant(s) in state custody as of _____
    Rule 20 from the District of _____

    Is this a potential death penalty case?   No   (Yes or No)

7.  Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to October 14, 2003?   ___ Yes   No   No

8.  Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to September 1, 2007?   ___ Yes   No   No

                                    _____
                                    Jeffrey N. Kaplan
                                    ASSISTANT UNITED STATES ATTORNEY
                                    Court ID No. A5500030

Penalty Sheet(s) attached                                    REV 4/8/08

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

Defendant's Name **ROY JESUS BUSTILLO, a/k/a "RJ"**

Case No: _____

Count #: 1

Conspiracy to Commit Mail Fraud and Wire Fraud.

Title 18, United States Code, Section 371

\* Max. Penalty:    5 years' imprisonment, $250,000 fine, 3 years' supervised release

\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms or forfeitures that may be applicable.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

Defendant's Name: **ROLANDO PEREZ, a/k/a "Roly"**

Case No: _____

**Count #: 1**

Conspiracy to Commit Mail Fraud and Wire Fraud

Title 18, United States Code, Section 371

* **Max. Penalty:**   5 years' imprisonment, $250,000 fine, 3 years' supervised release

*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms or forfeitures that may be applicable.

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name:** <u>**JOSE BARROSO, a/k/a "Pepe"**</u>

**Case No:** _____

**Count #: 1**

<u>Conspiracy to Commit Mail Fraud and Wire Fraud</u>

<u>Title 18, United States Code, Section 371</u>

**\* Max. Penalty:**   <u>5 years' imprisonment, $250,000 fine, 3 years' supervised release</u>

---

\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms or forfeitures that may be applicable.

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NUMBER: _____

### BOND RECOMMENDATION

DEFENDANT: ROY JESUS BUSTILLO, a/k/a "RJ"

$150,000 Personal Surety
(Personal Surety) (Corporate Surety) (Cash) (Pre-Trial Detention)

By: _____
AUSA: Jeffrey N. Kaplan

Last Known Address: N/A

What Facility: N/A

Agent(s): S/A Kyle S. Scheatzle, FBI
(FBI)  (SECRET SERVICE)  (DEA)  (IRS)  (ICE)  (**OTHER**)

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NUMBER: _____

### BOND RECOMMENDATION

DEFENDANT: ROLANDO PEREZ, a/k/a "Roly"

$150,000 Personal Surety
(Personal Surety) (Corporate Surety) (Cash) (Pre-Trial Detention)

By: _____
AUSA: Jeffrey N. Kaplan

Last Known Address: N/A

What Facility: N/A

Agent(s): S/A Kyle S. Scheatzle, FBI
(FBI) (SECRET SERVICE) (DEA) (IRS) (ICE) (**OTHER**)

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NUMBER: _____

### BOND RECOMMENDATION

DEFENDANT: JOSE BARROSO, a/k/a "Pepe"

$150,000 Personal Surety
(Personal Surety) (Corporate Surety) (Cash) (Pre-Trial Detention)

By: _____
AUSA:  Jeffrey N. Kaplan

Last Known Address: N/A

What Facility: N/A

Agent(s): S/A Kyle S. Scheatzle, FBI
(FBI)  (SECRET SERVICE)  (DEA)  (IRS)  (ICE)  (**OTHER**)

AO 455 (Rev. 01/09) Waiver of an Indictment

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| United States of America | ) |
|---|---|
| v. | ) Case No. |
| ROY JESUS BUSTILLO, a/k/a "RJ," | ) |
| | ) |
| Defendant | ) |

## WAIVER OF AN INDICTMENT

I understand that I have been accused of one or more offenses punishable by imprisonment for more than one year. I was advised in open court of my rights and the nature of the proposed charges against me.

After receiving this advice, I waive my right to prosecution by indictment and consent to prosecution by information.

Date: _____

_____
*Defendant's signature*

_____
*Signature of defendant's attorney*

_____
*Printed name of defendant's attorney*

_____
*Judge's signature*

**United States Magistrate Judge**
*Judge's printed name and title*

AO 455 (Rev. 01/09) Waiver of an Indictment

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| United States of America | ) |
|---|---|
| v. | ) Case No. |
| ROLANDO PEREZ, a/k/a "Roly," | ) |
| | ) |
| *Defendant* | ) |

## WAIVER OF AN INDICTMENT

I understand that I have been accused of one or more offenses punishable by imprisonment for more than one year. I was advised in open court of my rights and the nature of the proposed charges against me.

After receiving this advice, I waive my right to prosecution by indictment and consent to prosecution by information.

Date: _____

_____
*Defendant's signature*

_____
*Signature of defendant's attorney*

_____
*Printed name of defendant's attorney*

_____
*Judge's signature*

<u>United States Magistrate Judge</u>
*Judge's printed name and title*

AO 455 (Rev. 01/09) Waiver of an Indictment

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| United States of America | ) | |
|---|---|---|
| v. | ) | Case No. |
| JOSE BARROSO, a/k/a "Pepe," | ) | |
| | ) | |
| *Defendant* | ) | |

## WAIVER OF AN INDICTMENT

I understand that I have been accused of one or more offenses punishable by imprisonment for more than one year. I was advised in open court of my rights and the nature of the proposed charges against me.

After receiving this advice, I waive my right to prosecution by indictment and consent to prosecution by information.

Date: _____

_____
*Defendant's signature*

_____
*Signature of defendant's attorney*

_____
*Printed name of defendant's attorney*

_____
*Judge's signature*

United States Magistrate Judge
*Judge's printed name and title*